IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SOVEREIGN BANK,                          :
       Plaintiff
                                :

       vs.                              :    CIVIL NO. 1:CV-05-1150

BJ'S WHOLESALE CLUB, INC.,               :
FIFTH THIRD BANKCORP.
       Defendants                       :


*M E M O R A N D U M*

I.    *Introduction.*

      Plaintiff, Sovereign Bank, filed this lawsuit against defendants, BJ's Wholesale Club, Inc., and Fifth Third Bank, after Sovereign incurred losses when its customer's Visa card numbers were stolen from a computer file maintained by BJ's.  The losses were mainly for the cost of issuing new credit cards to replace the ones that had been compromised by the theft and for the cost of reimbursing those card holders who had suffered unauthorized charges to their accounts.

      We previously resolved the defendants' motions to dismiss the original complaint, *see Sovereign Bank v. Fifth Third Bank*, 395 F. Supp. 2d 183 (M.D. Pa. 2005), and Sovereign has now filed an amended complaint, which sets forth claims against BJ's for negligence (count I), breach of fiduciary duty (count II), and

promissory estoppel (count III), and against Fifth Third for breach of contract (count IV) and promissory estoppel (count V).

We are considering the defendants' separate motions to dismiss the amended complaint under Fed. R. Civ. P. 12(b)(6).  In considering the motions, we must accept as true the factual allegations in the complaint and construe any inferences to be drawn from them in Plaintiff's favor.  *See Mariana v. Fisher*, 338 F.3d 189, 195 (3d Cir. 2003).  We may dismiss a complaint under Fed. R. Civ. P. 12(b)(6) only if it is clear that no relief could be granted to Plaintiff under "any set of facts that could be proven consistent with the allegations." *Ramadan v. Chase Manhattan Corp.*, 229 F.3d 194, 195 (3d Cir. 2000).  The court is not limited to evaluating the complaint alone; it can also consider documents attached to the complaint, matters of public record, and other documents that are indisputably authentic. *Pension Ben. Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  The court may also consider "documents whose contents are alleged in the complaint and whose authenticity no party questions," even though they "are not physically attached to the pleading . . . ." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002).

II.   *Background*.

The amended complaint alleges the following.  Sovereign is a federal savings and loan association with its principal place of business in Wyomissing, Pennsylvania.  (Doc. 19, Am. Compl. ¶ 1.)  Visa is a "membership association" owned and controlled by its members.  (*Id.* ¶¶ 5 and 7.)  An "issuing member" issues Visa cards to cardholders; the relationship is contractual.  (*Id.* ¶ 9.)  An "acquiring member" enters into contracts with "merchants," (*id.* ¶ 10), to process card transactions at the retail end.  For the purposes of the lawsuit, Sovereign is an issuing bank and Fifth Third an acquiring bank.  (*Id.* ¶¶ 12 and 13.)  A "merchant" allows cardholders to access the Visa payment system by using their Visa cards to pay for the goods or services the merchant offers.  (*Id.* ¶ 11.)

As established in our prior memorandum, Fifth Third and BJ's have contracted by way of two merchant agreements.  One governs the processing of debit-card transactions and the other credit-card transactions.  Both contain the following language, quoting in pertinent part from paragraph 16 of each agreement: "This agreement is for the benefit of, and may be enforced only by, Bank and Merchant and their respective successors and permitted transferees and assignees, and is not for the benefit of, and may not be enforced by, any third party."  *Sovereign Bank, supra,* 395 F. Supp. 2d at 189.

3

"Visa has developed extensive by-laws, operating regulations and other programs to ensure the consistency, reliability and security of the payment system." (*Id.* ¶ 6.)  To become a member of Visa, a financial institution must agree in a "Member Agreement" to abide by Visa's Operating Regulations.  (*Id.* ¶ 15.)  A merchant also agrees to abide by the Operating Regulations.  (*Id.* ¶ 17.)  The Operating Regulations "require]" an acquiring bank like Fifth Third to "ensure that BJ's complies with the Operating Regulations.  (*Id.* ¶¶ 59 and 68.)  The Operating Regulations prohibit a merchant from storing or retaining cardholder information.  (*Id.* ¶¶ 22, 51.)

A bank card contains account information on the cardholder in a magnetic stripe on the back of the card.  (*Id.* ¶ 18).)  To complete a transaction, the merchant often runs the card through a magnetic-stripe terminal, which acquires the cardholder information and sends it to the issuing bank.  (*Id.* ¶¶ 18 and 19.)  The issuing bank then reviews the information and if everything is valid, approves the transaction.  (*Id.* ¶ 20.)  The merchant then completes the transaction with the cardholder.  (*Id.* ¶ 21.)

Sovereign cardholders used their Visa cards at BJ's.  (*Id.* ¶ 24.)  "Believing that BJ's would comply with the Operating regulations, Sovereign surrendered the Cardholder Information of its cardholders to BJ's."  (*Id.* ¶ 26.)  "Sovereign justifiably

trusted" that BJ's would use the information to "obtain[ ]
authorizations and would not store or retain" the cardholder
information. (*Id.* ¶ 27.)  However, BJ's did retain the
information after Sovereign had approved the transactions, rather
than delete it as required by the Operating Regulations. (*Id.* ¶
28.)

Thereafter, third parties obtained the cardholder
information to make unauthorized purchases. (*Id.* ¶ 29-31.)
Sovereign paid for the fraudulent transactions and incurred other
damages: the expense of issuing new cards, the loss of fees and
commissions while the cards were being replaced, and loss of good
will. (*Id.* ¶¶ 34 and 35.)

For the negligence claim against BJ's in count I,
Sovereign alleges that "BJ's had a duty to exercise reasonable
care in deleting or erasing cardholder information after a
transaction had been approved and/or safeguard such information,"
(*id.* ¶ 37), breached that duty by failing to delete the
information after Sovereign had approved the transaction, (*id.* ¶
39), and that as a result, the cardholder information was lost,
causing damage to Sovereign. (*Id.* ¶¶ 41 and 42.)

For the fiduciary duty claim against BJ's in count II,
Sovereign alleges that:

> 45.  A fiduciary relationship exists
> between Sovereign and BJ's by virtue of the
> trust Sovereign placed in BJ's when it

> surrendered the Cardholder Information of its
> cardholders to BJ's believing that BJ's would
> comply with the Operating Regulations.
>
> 46.   This relationship required BJ's to
> utilize the Cardholder Information for the
> limited purpose of obtaining authorizations
> for customer purchases.
>
> 47.   Because BJ's was expressly prohibited
> by the Operating regulations to store and
> retain the Cardholder Information . . .
> Sovereign justifiably trusted that BJ's would
> not retain and store the Cardholder
> Information . . . .

(*Id.* ¶¶ 45-47.)  BJ's breached its duty by retaining and storing

the information, thereby damaging Sovereign.  (*Id.* ¶¶ 45-47.)

For the promissory estoppel claim against BJ's in count

III, Sovereign alleges that:

> 51.   As a Merchant within the Visa payment
> system, BJ's either expressly or implied[ly]
> agreed to be bound by the Operating
> Regulations and reasonably expected that
> Members, such as Sovereign, would rely on this
> express and/or implied agreement to be bound
> by the Operating Regulations.
>
> 52.   Sovereign did rely on BJ's express
> and/or implied agreement to be bound by the
> Operating Regulations.
>
> 53.   In furtherance of that reliance,
> Sovereign provided BJ's with the Cardholder
> Information for its cardholders with the
> understanding that in accordance with the
> Operating Regulations, BJ's would not store or
> retain that information.

(*Id.* ¶¶ 51-53.)  BJ's did not comply with its promise, stored and

retained the information and thereby harmed Sovereign.

6

The remaining two counts are against Fifth Third.   In count IV, Sovereign alleges breach of contract, asserting it is a third-party beneficiary of the member agreement Fifth Third has with Visa and that Fifth Third breached the agreement by failing to insure that BJ's complied with the operating regulations requiring it not to retain or store cardholder information.[1]

Count V is a promissory estoppel claim, alleged against Fifth Third as an alternative to the contract claim.   In this claim, Sovereign alleges that "Fifth Third agreed to be bound by the Operating Regulations and agreed to insure that [merchants] such as BJ's, would comply with the Operating Regulations," (*id.* ¶ 68), that "Fifth Third reasonably expected that Issuing members, such as Sovereign, would rely on its agreement to be bound by the Operating Regulations and to insure that BJ's would comply with the Operating Regulations," (*id.* ¶ 69), that Sovereign did so rely, (*id.* ¶ 70), that "Sovereign provided BJ's with the Cardholder Information for its cardholders with the understanding that . . . BJ's would not store or retain" the information and that "Fifth Third would insure" that it did not, (*id.* ¶ 71), but

---

[1]   In our memorandum and order of October 18, 2005, resolving the motion to dismiss the original complaint, we permitted the contract claim to proceed against Fifth Third. 395 F. Supp. 2d at 203.   Fifth Third filed a motion to reconsider that ruling, and on January 25, 2006, we permitted discovery on factual issues relating to the contract claim. Thus, the validity of the contract claim is being questioned by Fifth Third, just not in the instant motion.

that "Fifth Third failed to comply with its promise to abide by the Operating Regulations and insure that BJ's would not store and retain" the information, (*id.* ¶ 71), thereby causing Fifth Third harm.

III. *Discussion.*

   A. *Fifth Third's Motion to Dismiss the Promissory Estoppel Claim.*

   Fifth Third moves to dismiss the promissory estoppel claim.[2]   Both Ohio and Pennsylvania have adopted the law of promissory estoppel as set forth in the Restatement (Second) of Contracts § 90 (1981).   *See Crouse v. Cyclops Indus.*, 560 Pa. 394, 402-03, 745 A.2d 606, 610 (2000); *Lobolito, Inc. v. North Pocono School Dist.*, 562 Pa. 380, 389 n.9, 755 A.2d 1287, 1292 n.9 (2000)(citing *Thatcher's Drug Store of West Goshen, Inc. v. Consolidated Supermarkets, Inc.*, 535 Pa. 469, 476, 636 A. 2d 156, 160 (1994)); *The Limited Stores, Inc. v. Pan American World Airways, Inc.*, 600 N.E.2d 1027, 1033 (Ohio 1992); *Karnes v. Doctors Hospital*, 555 N.E.2d 280, 283 (Ohio 1990); *Talley v. Teamsters, Chauffers, Warehousemen, and Helpers, Local No. 377,*

---

[2]   Fifth Third says that Ohio law controls but that Ohio and Pennsylvania law on promissory estoppel is the same.   We agree there is no difference in the law, so choice of law is not an issue here.

357 N.E.2d 44, 47 (Ohio 1976).  In pertinent part, Restatement §

90(1) provides as follows:

> (1) A promise which the promisor should
> reasonably expect to induce action or
> forbearance on the part of the promisee or a
> third person and which does induce such action
> or forbearance is binding if injustice can be
> avoided only by enforcement of the promise. .
> . .

In the instant case, Fifth Third argues that Plaintiff

fails to allege a promissory estoppel claim for the following

reasons.  First, citing *Telxon Corp. v. Smart Media of Delaware,*

*Inc.*, 2005 WL 2292800, at *21 (Ohio App.), and *Thatcher s Drug*

*Store, supra*, 535 Pa. at 478-79, 636 A. 2d at 160-61, it maintains

that the promise must be clear and unambiguous and one that

involves a promise to do a specific act within a relatively brief

period of time, citing *Nilavar v. Osborn*, 127 Ohio App. 3d 1, 17,

711 N.E. 2d 726, 736 (1998).  But Fifth Third's alleged promise

fails these requirements in the following ways.  For one, Fifth

Third's contractual agreement was only to ensure BJ's compliance

in general with Visa's Operating Regulations, not a promise to

perform any particular specific acts nor a promise that data would

never be compromised.  For another, the promise was not made to

Sovereign itself but to Visa, and Sovereign has not even alleged

it was in existence when Fifth Third made the promise to Visa.[3]

---

[3]  Fifth Third traces its contractual agreement to abide by
Visa's Operating Regulations to a contract made by a predecessor

Second, the promisee's reliance must be reasonable, *see Shampton v. City of Springboro*, 786 N.E. 2d 883, 887 (Ohio App. 2003); *Shoemaker v. Commonwealth Bank,* 700 A.2d 1003, 1008 (Pa. Super. 1997)(citing *Thatcher's Drug Store, supra*, 535 Pa. at 477-78, 636 A. 2d at 160); *Nabisco, Inc. v. Ellison*, 1994 WL 622136 at *6 (E.D. Pa.)(applying Pennsylvania law), and here Sovereign's reliance would not be reasonable since it would be relying on a promise Fifth Third made to Visa thirty-five years ago.  Further, Sovereign in fact did not rely on Fifth Third's promise since Sovereign provided its customers' card numbers to BJ's because of its own agreement with Visa, not Fifth Third's agreement with Visa.

Third, refusing to enforce the alleged promise would not be unjust.  First, "Sovereign voluntarily elected participation in the Visa system.  It knew that the Visa Operating Regulations establish the rules for the system and a compliance and dispute resolution process for violations of those rules." (Doc. 30, Supporting Br. at p. 10.)  Fifth Third points out that Sovereign does not allege it joined the Visa system solely because it believed Fifth Third would never breach its agreement with Visa. Second, Visa can enforce violations of the Operating Regulations, so there in no injustice in not allowing Sovereign to pursue

---

bank with Visa's predecessor in 1970.  (Doc. 70, App. A).

claims here.  Third, Sovereign also had the right under the
Operating Regulations to pursue losses by way of the adjudicatory
process provided by the regulations.

In opposition, Plaintiff argues that it has pled a valid
claim for promissory estoppel.  As alleged, Fifth Third promised
to ensure that BJ's would comply with the Operating Regulations, a
promise that Fifth Third should have reasonably expected Plaintiff
to rely on.  Sovereign did in fact rely on that promise and
provided BJ's with its customers' cardholder information, thinking
Fifth Third would comply with the regulations by ensuring that
BJ's would not store or retain the information.  However, Fifth
Third failed to comply with its promise to abide by the Operating
Regulations, failed to insure that BJ's would not store and retain
the cardholder information, and unjustly harmed Sovereign as a
result.

As further support for the claim, Sovereign relies on
the structure of the Visa network.  As Sovereign puts it:

> To survive, the Visa network requires
> parties unknown to each other to make promises
> to each other and rely on the promises of
> others.  Because there are so many parties
> involved in the Visa network, it would be
> impracticable (if not impossible) for each
> party to specifically contract with each other
> party in the network.  But this does not mean
> that Members do not reasonably rely on other
> Members in the network to do what they
> promised to do: abide by the Operating
> Regulations.  In fact, within the Visa
> network, because the Members are virtually

> unknown to each other, the need to rely on
> each other is even greater than if an actual
> contract existed.  For example, when Sovereign
> places the Cardholder Information on the
> magnetic stripe for its customers' use of the
> card within the Visa network, Sovereign is
> reasonably relying on the fact that Merchants
> like BJ's will not store and retain that
> confidential information and Members like
> Fifth Third will make sure Merchants like BJ's
> are not storing and retaining that
> information.

(Doc. 40, Pl.'s Opp'n Br. at p. 15).

After review of the parties' arguments, the court concludes that Plaintiff cannot allege a valid promissory estoppel claim for two reasons.  First, we do not believe that Sovereign's decision to provide BJ's with its cardholders' information was made in reliance on Fifth Third's promise to insure that BJ's would not store or retain the information.  The wider context here is the Visa network, where the parties are numerous and unknown to each other.  Sovereign's unfortunate experience with BJ's cannot be separated from this wider context.  More broadly and more accurately, Sovereign's claim is based on its decision to participate in the Visa network, but it cannot reasonably argue that it joined the network in reliance on the promise of unknown acquiring banks, or any one acquiring bank.  As Fifth Third puts it, we would be "ignor[ing] the obvious," (doc. 44, Reply Br. at p. 10) if we accepted Sovereign's promissory estoppel claim here, that "Sovereign joined the Visa system because it believed it was

in its best interests to do so," (*id.*), not because Fifth Third, or any other acquiring bank in particular, had insured its merchants' compliance with Visa Operating Regulations. *See GMH Assocs., Inc. v. Prudential Realty Group*, 752 A.2d 889, 904 (Pa. Super. 2000)("promissory estoppel does not apply if the complaining party acted on its own will and not as the result of the defendant's representations") (citing *Ravin, Inc. v. First City Co.*, 692 A.2d 577, 581 (Pa. Super. 1997)).

Second, even if Sovereign had relied on Fifth Third's promise, that reliance would not have been reasonable. As Fifth Third points out, Sovereign relies on a promise made to a third party, Visa. While this does not automatically defeat the claim,[4] inasmuch as the promise was not made directly to Sovereign, it was unreasonable for Sovereign to rely on it in the context of the Visa network. *See Telxon Corp. v. Smart Media of Delaware, Inc.*, 2005 WL 2292800 at *30 (Ohio App.)(nonprecedential)(rejecting promissory estoppel claim based on promise to a third party, reasoning that it made the promise ambiguous).

In this regard, it is significant that most promissory-estoppel cases deal with parties that have had direct contact with one another and a course of negotiations that might have led one of them, reasonably or unreasonably, to believe it could act upon

---

[4]  Restatement § 90 recognizes that a third party to promise may still enforce it.

the representations of the other.  *See, e.g, Crouse v. Cyclops Indus.*, 560 Pa. 394, 745 A.2d 606 (2000); *GMH Assocs., supra; McCroskey v. State*, 456 N.E.2d 1204 (Ohio 1983); *Telxon Corp, supra; Nilavar v. Osborn*, 711 N.E.2d 726 (Ohio App. 1998).  Here, in contrast, we have two banks (one an issuing bank and the other an acquiring bank) independently signing onto a credit-card network.

     B.  *BJ's Motion to Dismiss.*

         1.  *The Negligence Claim.*

     BJ's moves to dismiss Plaintiff's negligence claim on the basis of the economic loss doctrine.  It relies on our ruling on Fifth Third's motion to dismiss the original complaint, where we dismissed the negligence claim against Fifth Third on the basis of the economic loss doctrine.  *See Sovereign Bank, supra,* 395 F. Supp. 2d at 203-05.  As noted in our earlier memorandum, the economic loss doctrine bars a negligence claim for "purely economic loss[es]" unless there has also been physical injury, either to person or property.  *See Aikens v. Baltimore & Ohio RR. Co.*, 348 Pa. Super. 17, 20, 501 A.2d 277, 278 (1985).

     In opposing BJ's motion to dismiss the negligence claim, Sovereign makes the same arguments it made against Fifth Third's motion.  The economic loss doctrine does not apply because: (1) Sovereign lost "real and concrete property," its money; and (2)

Sovereign's losses were foreseeable, and the doctrine only applies to unforeseeable losses.  We rejected both these arguments in our earlier memo and we do so again.  We will therefore dismiss the negligence claim against BJ's.

> 2.  *The Claim For Breach of*
>     *Fiduciary Duty.*

BJ's moves to dismiss the fiduciary duty claim against it on the following grounds.  First, Sovereign has no fiduciary duty to its customers so imposing such a duty here on BJ's would hold BJ's to a higher standard than Sovereign.  Second, Pennsylvania law imposes a fiduciary duty only when one party has turned over substantial control of its affairs to another, and Sovereign only alleges that it surrendered its cardholders' information to BJ's while a transaction was being made, not the substantial surrender of control over its affairs.  Third, BJ's must have agreed to accept fiduciary responsibilities before such a relationship can exist, and Sovereign has not alleged that BJ's did so.

The second argument is dispositive and requires dismissal of the fiduciary duty claim, so we need not consider the other ones.  Under Pennsylvania law, a fiduciary relationship exists when "'one person has reposed a special confidence in another to the extent that the parties do not deal with each other on equal terms, either because of an overmastering dominance on

15

one side, or weakness, dependence or justifiable trust, on the other.'" *Ellis v. Steck Mfg., Co.*, 2001 WL 1632125 at *7 (E.D. Pa.)(quoted cases omitted); *Harold v. McGann*, 406 F. Supp. 2d 562, 571 (E.D. Pa. 2005)(quoting *Estate of Clark*, 467 Pa. 628, 635, 359 A.2d 777, 781 (1976)). But "a business association may be the basis of a confidential relationship only if one party surrenders substantial control over some portion of his affairs to the other." *Harold, supra*, 406 F. Supp. 2d at 571 (quoting *In re Scott's Estate,* 455 Pa. 429, 433, 316 A.2d 883, 886 (1974)); *Ellis, supra*, 2001 WL 1632125 at *7; *Polymer Dynamics, Inc. v. Bayer Corp.*, 2000 WL 1146622 at *7 (E.D. Pa.); *PTI Converted Paper Products, Inc. v. Stone Container Corp.*, 1995 WL 434577 at *2 (E.D. Pa.).

In support of its claim, Plaintiff argues that the surrender of its customers' cardholder information while its customers are using the cards at BJ's represents a surrender of substantial control over some portion of its business. We disagree. As BJ's argues, the surrender of the information to BJ's was simply part of a business transaction between the cardholder and BJ's.

In making this argument, Plaintiff relies on *PTI Converted Paper Products, supra*, but that case is distinguishable. There, the plaintiff was in the business of selling pizza boxes, which it purchased from the defendant. The plaintiff alleged that

16

it had an arrangement with the defendant whereby it supplied the
defendant with its customer list, and the defendant shipped the
boxes directly to the plaintiff's customers.  The defendant had
also agreed not to directly solicit the plaintiff's customers.
The plaintiff averred that the defendant did solicit its customers
and in so doing had breached a fiduciary duty to the plaintiff.
On the defendant's motion to dismiss, the court ruled that the
plaintiff had stated a valid claim for breach of fiduciary duty,
reasoning that the arrangement "arguably constitute[d] the
surrendering of substantial portions of [its] affairs to the
other."  1995 WL 434577 at *2.

PTI Converted Paper Products does not assist Plaintiff
here because in that case the defendant had taken over most of the
plaintiff's business, including supplying the boxes and sending
them to the plaintiff's customers.  Here, on the other hand, BJ's
only acquired cardholder information to complete a consumer
transaction.

Plaintiff also seems to argue that it had to trust BJ's
with the cardholder information and that the trust it had to
exhibit in doing so is sufficient to set forth a fiduciary duty
claim.  We disagree.  First, as noted above, in a business
relationship only a transfer of substantial control over some
portion of its affairs would suffice.  Second, a business
transaction is not enough to establish a fiduciary relationship;

17

otherwise, every breach of contract would support such a claim. *See eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 23 (Pa. Super. 2002).[5]

> 3. *The Promissory Estoppel Claim.*

For its promissory estoppel claim against BJ's, Sovereign alleges that BJ's either expressly or impliedly agreed to be bound by the Operating Regulations and not store or retain cardholder information on Visa cards, that BJ's reasonably expected that Sovereign and other issuing banks would rely on that agreement, that Sovereign did rely on BJ's agreement by providing BJ's with the cardholder information, but that BJ's did not comply with its promise and stored and retained the information, thereby harming Sovereign.

Both parties argue the validity of the promissory estoppel claim using Pennsylvania law. That law was set forth above in connection with Fifth Third's motion to dismiss. Essentially, a promise will be enforced against the promisor if the promisor should have reasonably expected the promise to have induced action on the part of the promisee or a third person, and

---

[5] Plaintiff also seems to be arguing that under the federal standard of notice pleading, as opposed to fact pleading, its allegations are sufficient. We disagree. On a Rule 12(b)(6) motion, we need not credit legal conclusions and need accept only the reasonable inferences that can be drawn from the factual averments. *See Evancho v. Fisher*, 423 F.3d 347, 350-51 (3d Cir. 2005).

the promise does induce such action and if injustice can be avoided only by enforcement of the promise. *See Crouse, supra*, 560 Pa. at 402-03, 745 A.2d at 610; *Lobolito, Inc., supra*, 562 Pa. at 389 n.9, 755 A.2d at 1292 n.9 (2000)(citing *Thatcher's Drug Store of West Goshen, Inc. v. Consolidated Supermarkets, Inc.*, 535 Pa. 469, 476, 636 A. 2d 156, 160 (1994)). The promisee's reliance must also be reasonable. *See Shoemaker v. Commonwealth Bank,* 700 A.2d 1003, 1008 (Pa. Super. 1997)(citing *Thatcher's Drug Store, supra*, 535 Pa. at 477-78, 636 A. 2d at 160); *Nabisco, Inc. v. Ellison*, 1994 WL 622136 at *6 (E.D. Pa.)(applying Pennsylvania law).

BJ's moves to dismiss the claim with the following arguments. First, implied promises are not enough, and Sovereign has not alleged a specific promise BJ's made to it. Second, since we have already noted that BJ's expressly disclaimed any intention to benefit third parties in its merchant agreements with Fifth Third, *see Sovereign Bank, supra*, 395 F. Supp. 2d at 190-91, BJ's could not have reasonably expected that Sovereign would have relied on its contractual agreements to abide by the Operating Regulations nor could Sovereign have reasonably relied on those agreements. Third, Sovereign took no action to its detriment in reliance on the promise.

We need not address the first and third arguments; the second one has merit and requires dismissal of the promissory

19

estoppel claim.  Simply put, when BJ's expressly excluded third

parties from benefitting from its merchant agreements with Fifth

Third, it could not have reasonably expected that Sovereign, a

third party to those agreements, would have relied on the promise

BJ's made in the agreements to abide by the Operating Regulations,

nor could Sovereign have reasonably relied on the promise in those

agreements.  *See In re: U.S. West, Inc. Securities Litigation*, 65

Fed. Appx. 856, 864-65 (3d Cir. 2003)(nonprecedential)(rejecting

promissory estoppel claim after deciding that promisees could not

have reasonably relied on a no-solicitation promise in a merger

agreement when the agreement also contained a provision

specifically disclaiming any third-party rights)(applying Delaware

law); *Donald B. Murphy Contractors, Inc. v. King County*, 49 P.3d

912, 915 (Wash. 2002)(rejecting promissory estoppel claim when

subcontractor could not have reasonably relied on County's promise

to obtain insurance in County's contract with general contractor

when the contract when the contract specifically disclaimed third-

party rights in subcontractors)(Washington law).  *See also*

*Cardamone v. Univ. of Pittsburgh*, 253 Pa. Super. 65, 73-74, 384

A.2d 1228, 1233 (1978)(promisor university could not have

reasonably expected promisee student to rely on a memorandum

whereby the university agreed to pay medical bills for an injured

student when the memorandum itself warned that it was not intended

as a legally enforceable obligation nor as an attempt to affect

any cause of action the student may have against the university);
*MDNet, Inc. v. Pharmacia Corp.*, 147 Fed. Appx. 239, 244 (3d Cir.
2005)(nonprecedential)(promisee could not have reasonably relied
on subsequent oral promises when prior written agreement required
any subsequent agreement to be in writing before it would be
binding).

      In opposition, Plaintiff argues BJ's cannot rely on its
merchant agreements with Fifth Third because a promissory estoppel
claim exists in the absence of an actual contract.  *See MLEA, Inc.
v. Atlantic Recycled Rubber Inc.*, 2005 WL 1217190 at *3 (E.D.
Pa.); *Iversen Baking Co. v. Weston Foods, LTD.*, 874 F. Supp. 96,
102 (E.D. Pa. 1995).  We think this argument misses the mark
because BJ's does not rely on its merchant agreements to argue the
existence of contracts that defeat the promissory estoppel claim,
only that the disclaimer of third-party rights in those contracts
defeats an essential element of a promissory estoppel claim.

      Plaintiff also argues that we cannot rely on *In re: U.S.
West Inc., supra*, because it is not precedential, involved
Delaware law, and dealt with shareholder rights in a public
company.  We disagree.  A nonprecedential opinion may nonetheless
be persuasive.  *See Linden v. SAP America, Inc.*, 2004 WL 1047719
at *4 n.3 (E.D. Pa.); *Prudential Prop. & Cas. Ins. Co. v.
Jefferson*, 185 F. Supp. 2d 495, 499 n.1 (W.D. Pa. 2002).  Delaware
law on promissory estoppel is substantively the same as

Pennsylvania law.  *In re: U.S. West Inc., supra*, 65 Fed. Appx. at

863-64 (listing elements of the claim under Delaware law).  And

the result in *In re: U.S. West* did not turn on the issue of

shareholder rights.[6]


IV.   *Conclusion*.

        Our resolution of the motions to dismiss the amended

complaint means that there are no longer any claims against BJ's

in this case and that the only remaining claim against Fifth Third

is for breach of contract, which is currently undergoing

discovery.

        We will issue an appropriate order.


                              /s/William W. Caldwell
                              William W. Caldwell
                              United States District Judge

Date: April 13, 2006

---

        [6]  We have examined the other points made in Part D.2(b) of
Plaintiff's opposition brief and find them unpersuasive.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SOVEREIGN BANK,                    :
          Plaintiff
                                   :

          vs.                      :    CIVIL NO. 1:CV-05-1150

BJ'S WHOLESALE CLUB, INC.,         :
FIFTH THIRD BANKCORP.
          Defendants               :


*O R D E R*


          AND NOW, this 13th day of April, 2006, it is ordered

that:

          1.  The motion (doc. 31) of defendant BJ's
          to dismiss the amended complaint against it is
          granted in part.  The contract claim (count
          III) and the equitable-indemnification claim
          (count V) are hereby dismissed.  The motion to
          dismiss the negligence claim (count I) is
          denied.

          2.  The motion (doc. 29) of defendant Fifth
          Third Bank to dismiss the amended complaint
          against it is granted in part.  The negligence
          claim (count II) and the equitable-
          indemnification claim (count VI) are hereby
          dismissed.  The motion to dismiss the contract
          claim (count IV) is denied.



                              /s/William W. Caldwell
                              William W. Caldwell
                              United States District Judge